# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Days Inn Room 205
7761 Old Country Lane
Huber Heights, Ohio 45424

Case No. 3:15mj518

MICHAEL J. NEWMAN

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the **Southern** District of **Ohio**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 846 | conspiracy to distribute controlled substances |
| 21 USC s. 841(a)(1) | possession with intent to distribute controlled substances |

The application is based on these facts:
Attached Affidavit of Special Agent Steve Lucas

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Steve Lucas, Special Agent of the DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/03/2015

*Judge's signature*

City and state: Dayton, Ohio

Michael Newman, US Magistrate Judge
*Printed name and title*

AFFIDAVIT

Steven M. Lucas, a Special Agent (S/A) of the Drug Enforcement Administration (DEA), United States Department of Justice ("hereinafter referred to as the Affiant"), being duly sworn, deposes as follows:

INTRODUCTION

1. Affiant is an "Investigative or Law Enforcement Officer" of the United States Drug Enforcement Administration within the meaning of Title 21, United States Code, Section 878. That is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 21, United States Code, Section 878.

2. Affiant has been employed by the DEA as a special agent since June 2005, and is assigned to the Dayton Resident Office. Prior to becoming a special agent, Affiant was a police officer with the Schererville Police Department between 1995 and 2005. During that time, Affiant was assigned to the DEA HIDTA group in Merrillville, Indiana for approximately 4 years. Affiant has conducted and participated in complex drug trafficking conspiracy and money laundering investigations which have resulted in arrests; execution of search warrants that resulted in the seizure of narcotics, narcotics proceeds and other evidence of narcotics trafficking activities; and supervised the activities of cooperating sources (CS) that have provided information and assistance resulting in narcotics purchases. Through training and experience, affiant is familiar with the manner in which persons involved in the illicit distribution of controlled substances often operate. These people usually attempt to conceal their identities, as well as the locations at which they reside, and where they store controlled substances and the illegal proceeds derived there from. Through training and experience, affiant is familiar with the practices of narcotics distributors, whereby they attempt to conceal the true nature, source

and location of proceeds of illegal activity, commonly referred to as money laundering. Affiant has participated in several Title-III wire tap investigations and is familiar with how local drug traffickers and high level traffickers conduct transactions. Affiant is familiar with internal smugglers who conceal narcotics within their digestive system and travel to Ohio.

3. Affiant is participating in an investigation conducted by agents of the DEA and other agencies, into the heroin distribution activities of individuals in the Dayton, Ohio area and elsewhere. Heroin is a Schedule I controlled substance. I am familiar with the facts and circumstances described herein and make this affidavit based upon personal knowledge derived from my participation in this investigation, conclusions I have reached based on my training and experience, and upon information I believe to be reliable from the following sources:

    A. Physical surveillance conducted by federal and local law enforcement agents, the details of which have been reported to me either directly or indirectly;

    B. Information developed from cooperating sources and defendant witnesses;

    C. Public records.

This affidavit does not contain all facts known to Affiant, only those necessary to establish probable cause in support of the request of a search warrant for Room 205 of the Days Inn, located at 7761 Old Country Lane, Huber Heights ("TARGET ROOM") for evidence, contraband, instrumentalities or items used to facilitate violations of Title 21, United States Code, Sections 846 (conspiracy to distribute controlled substances) and 841(a)(1) (possession with intent to distribute a controlled substance).

## FACTS SUPPORTING PROBABLE CAUSE

4. On December 2, 2015, Affiant was able to gather information from a source in San Diego related to the travel of Richard BARRIOS and Jesus COLLAZO. DEA San Diego investigators noted BARRIOS and COLLAZO did not appear to be relatives and purchased one-way airline tickets from Ontario, California to Dayton, Ohio. Further, both paid $453.48 cash for the tickets and did not check any bags.

5. Affiant is aware from past investigations that internal heroin couriers often purchase one-way airline tickets and pay cash for the tickets. Further, Affiant is aware internal couriers often do not check bags as they usually have short trips to the destination city. Affiant is aware Dayton, Ohio has been a destination city for multiple internal couriers and further continues to have a significant end user market for heroin.

6. Affiant was able to learn BARRIOS, per his Criminal History report, had been charged and convicted in 2009, 2010, and 2012 for felony possession of a controlled substance in California. Further, BARRIOS had numerous other convictions to include a pending arrest from November 11, 2015, for possession of a controlled substance Misdemeanor.

7. Based on the above information, DEA Dayton investigators conducted surveillance at the Dayton Airport to further investigate BARRIOS and COLLAZO. At approximately 10:35 PM, Investigators observed BARRIOS and COLLAZO exit the jet-way from Southwest Airlines flight 4089. Investigators noted BARRIOS and COLLAZO walk together from the jet-way and out to the front of the airport.

8. Investigators observed COLLAZO and BARRIOS get into a silver GMC Envoy. The Envoy was found to have registration plate GMW-4147 and was registered to Gemma Zamudio with an address of 5179 Monitor Drive, Huber Heights, Ohio. The driver of the GMC was an unknown male ("UM-1").

9.      DEA Investigators conducted surveillance and observed the Envoy leave the airport and travel to State Rd 202. The Envoy was observed going through the McDonalds drive through and appear to obtain two bags of food and large drinks. Affiant has noted in past investigations, couriers often obtain food upon arrival in Dayton, Ohio. Affiant is aware internal drug couriers often do not eat for days prior to swallowing heroin pellets and eat fast food upon arrival to assist in the process of expelling the pellets from their digestive system.

10.     Investigators observed the Envoy travel from the McDonalds to the Days Inn, located at 7761 Old Country Lane, Huber Heights, Ohio 45424. Task Force Officer Steve Duteil was able to go into office at the same time as BARRIOS and COLLAZO and observed CALLAZO obtain Room 205 and pay cash for the room. Affiant observed CALLAZO as he went to the **TARGET ROOM** on the exterior of the hotel, and appear to use a key card to enter the room.

11.     Investigators observed BARRIOS re-entry to Envoy and investigators followed the Envoy with BARRIOS and UM-1 to the Kroger Parking located at 7747 Old Troy Pike, Huber Heights, Ohio. BARRIOS and UM-1 entered into the Kroger store, and both Special Agent Dave Ashley and Special Agent Joe Behlke observed BARRIOS obtain gloves and laxative from the medical isle. BARRIOS and UM-1 were observed leaving the Kroger after BARRIOS used the self-service check out and paid cash for items. Affiant observed BARRIOS as he was dropped off at the Days Inn, and TFO Duteil observed BARRIOS as he used a key card to enter **TARGET ROOM.**

12.     Investigators obtained a copy of the Kroger receipt and noted BARRIOS purchased laxative, gloves, kitchen bags, air fresh spray, razor blades, deodorant, toothpaste, and Modelo beer. Affiant is aware from past investigations with internal couriers that often gloves are worn during the expelling process of the secreted heroin pellets. Further, Affiant is aware it is common for internal couriers to utilize laxative to assist with the process of expelling heroin pellets. Affiant, has observed razor blades with couriers and is familiar from past experience that razor blades are used to cut open the

layers of pellets and remove the narcotic inside for distribution.

13.     In Summary, Affiant BARRIOS and COLLAZO are likely at the **TARGET ROOM**. Further Affiant believes it is likely narcotics are being expelled from BARRIOS and COLLAZO inside the room. Affiant believes other evidentiary items including gloves, razor blades, cellphones, paperwork will be in the **TARGET ROOM.**

14.     Affiant knows from his training and experience in drug investigations that traffickers often maintain in their residences and other locations from which they conduct their drug trafficking activity, controlled substances, books, records, receipts, notes, ledgers, and other papers relating to the procurement, distribution, storage and transportation of controlled substances to include records showing the phone numbers and/or pager numbers of suppliers or customers, and other criminal associates. They frequently maintain receipts such as credit card billings, telephone bills and toll records, parking stubs, hotel reservations/records, airline tickets, gas receipts and various notes. They possess items used to package controlled substances. It is also common for these drug traffickers to maintain electronic devices, to include but not limited to, mobile telephones, computers, paging devices, answering machines, police scanners and money counters to facilitate their criminal activity. These items are commonly maintained in locations to which drug traffickers have frequent and ready access, i.e. homes, apartments, businesses and automobiles.

15.     It is common for drug traffickers to conceal narcotics, narcotics records, narcotics proceeds and other related items described above within their businesses, residences, and automobiles; with their criminal associates; or with other trusted individuals in order to conceal such items from law enforcement authorities.

16.     Persons engaging in drug trafficking commonly conceal large amounts of currency, financial instruments, precious metals and other items of value. It is common for drug traffickers to purchase items costing over ten thousand dollars. In doing so, traffickers will often violate federal structuring laws (Title 31, U.S.C. Sections 5324) by

obtaining several cashier's checks and/or money orders in small increments from several institutions. Traffickers often utilize agents or "smurfs" to purchase these checks or money orders, the purchase of which generates receipts. The proceeds of drug transactions, and evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money gained through engaging in narcotics activities is often found in the trafficker's residences, businesses, automobiles and other locations maintained for the purpose of concealing their activities.

17. Affiant knows that narcotics traffickers often purchase and/or title assets and open accounts, such as utility accounts, in fictitious names, aliases, or the names of relatives, associates, girlfriends or business entities to avoid detection of these assets and accounts by government agencies. Even though these assets and accounts are in names other than the traffickers', the narcotics traffickers actually own and continue to use these assets and accounts and exercise dominion and control over them.

18. Persons engaged in drug trafficking often take or cause to be taken photographs and/or videotapes of themselves, associates, drug proceeds or property derived from the proceeds derived from the sale of controlled substances. Traffickers usually maintain these items in their possession.

19. Affiant is aware, based on his training and experience that drug dealers frequently maintain firearms and weapons to protect both the controlled substances and proceeds derived from their sales. Drug traffickers maintain firearms as a use of force, or threat of force, against rival drug dealers and/or delinquent customers.

20. Based upon the information contained in this affidavit, affiant believes that there is probable cause to believe BARRIOS and COLLAZO and others are involved in a conspiracy to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1). Affiant asserts there is probable cause to believe evidence of that violation, along with the fruits and/or instrumentalities of that offense are located at the **TARGET ROOM.**

_____
Steven M. Lucas, Special Agent
Drug Enforcement Administration


Subscribed and sworn to before me on December 3, 2015.

_____
Honorable Michael Newman
United States Magistrate Judge

ATTACHMENT A

The premises located at Days Inn Room 205, 7761 Old Country Lane, Huber Heights, Ohio 45424.    Days Inn Room 205, 7761 Old Country Lane, Huber Heights, Ohio 45424 is more fully described as follows:

Days Inn Room 205 is located on the second floor of the Days Inn at 7761 Old Country Lane, Huber Heights, Ohio 45424.    Room 205 has an exterior door which is blue in color.    The numbers "205" appear on the upper portion of the door.

ATTACHMENT B

ITEMS TO BE SEIZED

I respectfully submit that there is probable cause to believe that the following items will be found at this premises:

    a. Heroin, illegal narcotics and related narcotics paraphernalia;

    b. Property that constitutes evidence of the commission of a criminal offense;

    c. Cellular telephones, pagers, scales, packaging materials, and storage containers which are property designed or intended for use or which is or has been used as the means of committing a criminal offense;

    d. Assets such as United States currency, money drafts, real estate drafts, financial instruments, including stocks and bonds representing the proceeds of the distribution of controlled substances;

    e. Correspondence, books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances;

    f. Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances;

    g. Corresponding books, records, receipts, notes, ledgers, and other papers relating to the activities of individuals involved in distributing controlled substances;

    h. Records relating to income and expenditures of money and wealth, including but not limited to money orders, wire transfers, cashier's checks, receipts, bank statements, passbooks, checkbooks, and check registers;

    i. Bank account records, safe deposit box records, wire transfer records, bank statements, escrow accounts, address books, and paychecks;

    j. Indicia of occupancy, residency, rental and/or ownership of a premises, including, but not limited to mail, utility and telephone bills, cancelled envelopes, rental, purchase or lease agreements;

    k. Documents indicating interstate and/or foreign travel such as travel itineraries, plane tickets, boarding passes, motel and hotel receipts, passports, and visas, credit card receipts, and telephone bills, rental car information;

    l. Firearms, ammunition, any firearms parts or accessories and any records or receipts pertaining to firearms and ammunition;

    m. Computer disk and diskettes, computer hardware and software containing records of financial or drug-related transactions involving the individuals and/or businesses they are associated with in any way;

    n.    Photographs, including still photos, negatives, video tapes, films, underdeveloped film and the contents therein, slides, in particular photographs of potential co-conspirators, assets and/or controlled substances.

    o.    Razor blades, gloves, packaging materials for narcotics.

Case: 3:15-mj-00518-MJN Doc #: 1 Filed: 12/03/15 Page: 11 of 11  PAGEID #: 11

    n.    Photographs, including still photos, negatives, video tapes, films, underdeveloped film and the contents therein, slides, in particular photographs of potential co-conspirators, assets and/or controlled substances.

    o.    Razor blades, gloves, packaging materials for narcotics.